All right, the next case we're going to hear is United States v. Ramirez-Alaniz and Mr. Gilbert. Good morning, and may it please the Court, this case presents a very straightforward and simple question for this Court, and this Court should remand back to the District Court with the instruction that the Court should apply the criteria for civil commitment based upon anticipated conduct only within the United States and its territories. Why is it otherwise? It seems to me that the United States' interest is to protect the United States community, but I don't think that this case goes beyond it. Basically, we have a man that has been found to fit the criteria, and if we were to reverse, he would be back out on the street right now, right? There's no detainer, there's no homeland security proceeding, there's no criminal proceeding, so there's an interest in protecting the community in the United States, and that's as far as we need to go, isn't it? Respectfully, Judge Niemeyer, no, that's not what would happen in this case. In this case, first of all, Judge Britt specifically, when he invited the appeal, I think he very clearly wrote in his order, in effect, that he was finding that he met the criteria for commitment because of the fact that if he goes back to Mexico and he's not medicated, he would present a substantial risk of bodily injury to others in Mexico. That applies to the people in the United States, too. I mean, I don't think the injury caused in other countries is of concern to Congress or the statute. I agree. Yeah, and it's sort of curious, that reasoning to include anything in Mexico, but quite apart from that, in this case, the real world facts are the findings are applicable to the United States community. If we issued the order today that he'd be released, he'd be released today or tomorrow morning. Well, and I'm not . . . He'd be right out in the community, and he'd have that risk to American citizens and property. But I . . . But that really isn't how the district court analyzed it, as I understood what the district court did. I mean, the district court looked at the issue of other person writ law without geographical limitations to tee that question up. Well, perhaps the question is, and perhaps this is Judge Niemeyer's question, does it matter because the findings with respect to Mr. Ramirez-Zelanis are equally applicable to citizens of the United States, either because he would be released here or because given his pattern of recidivism, he would be back here within a matter of weeks? Judge Duncan, I think it's really important to look at the facts and what happened in this record in its entirety. And in the record . . . And that is great. But if you could get to my question too, and I'm sure you will, but does it, for purposes of how the district court teed it up, how the district court analyzed it, does it matter if the findings would also apply to harm to citizens in the United States? I'm sorry, go ahead. Just keeping in mind that question. I hope I'm not misunderstanding your question. But in essence, what happened here is Mr. Ramirez-Zelanis was brought to court. He had conflicting opinions from the mental health experts. Dr. Tabrizi said he will not present a substantial risk if he is turned over. At the time, of course, there was a detainer against him. And she opined, as I recall, that the major mitigating factor is that he would not be released prior to deportation, right? Yes. And I think that's still correct, Your Honor. Now, I'm not asking this court to order to reverse and order him to be freed. That's not what I'm asking the court to do. I'm asking the court to simply remand and point out and answer the question that Judge Britt has been really struggling with for decades, and that is ... I don't understand why he needs to. Could I get, though, could I get an answer to my question? Yeah, please. Go ahead. Because I really am trying to understand this, and that would help me. And I believe, Your Honor, that the case presented to Judge Britt initially presented him with a question of diverging expert opinions, somewhat rare in these cases that we've experienced. A lot of times, the experts agree, and it's very simple. And for that, you are relying on Dr. Tabrizi's diagnosis and finding that he did not meet the criteria for commitment. Yes, Your Honor. But the reason that she concluded that he did not meet the criteria for commitment as I read it was that his release back to Arizona for deportation would not create a substantial risk of bodily injury to another in the United States. That was the basis, and if I'm wrong, please tell me. No, that's exactly correct. That was the basis for the divergence in the expert testimony. As to the ultimate opinion. As to the- On the criteria. Whether she, yes. I agree. I agree with that. Now, recall, Your Honor, that at the time that this case was heard, Mr. Alanis had been deported as an aggravated felon, and he had an order of removal, and that order would require him to be removed any time found in the United States. When they found him again, 14 miles from the border, that order kicked in and he was subject to removal. Now, they could have removed him then, but of course, the United States has the right to go forward with the criminal case, and they did that, and they went forward with the criminal case, but it was determined that he was incompetent to go forward with the case. At that time, the Arizona United States Attorney's Office said, once you're finished with the evaluation, if he cannot be restored, send him back so we can deport him. He still kicks back into removal. He's not staying here. That's correct, and that's- He's subject to a removal order, isn't he? Your Honor, I believe he's still subject to the original removal order, but I also would ask the court to consider that a party to litigation should not be able to manipulate the end result of the case by simply- I'm just trying to give meaning to the court's holding that, in other words, we don't speculate as to what the future events are. If we have a zone of interest that's being protected, which our United States community, we don't need to read the statute as governing damage or injury to Mexicans. I thought it was gratuitous going there. The judge says it's going to cause it to any person, any place, any geography. That's right, Your Honor. That's just too broad a reading. I agree. That's why we're here. But that doesn't change a thing, though. In other words, it's just his reasoning. The fact is he still stays committed until he's deported or until he's better. Well, I respectfully suggest, Your Honor, that if you go back to Judge Britt and the lower court and you say, it doesn't matter, you don't need to do that. You don't need to reach that question. You simply decide, if he meets the criteria for commitment, that Judge Britt, the way he articulated his order and the way he invited the appeal, would say, based upon the facts of this case, that this person who spent five years in Oregon without causing any problems, even though he was schizophrenic at that time, that once he arrived at- His condition has clearly deteriorated. And Dr. Tabrisi doesn't contend to the contrary. She doesn't contend that this is a normal functioning human being. She contends that there would be no risk of a bodily injury in the United States because he's not going to be in the United States. Exactly. But- Not that he's not a risk somewhere. He suffers from a lifelong illness of schizophrenia, which is the first part of it. And the second aspect of it is, as a result of that, would his release, unconditional release, create this risk? Well, the judge concluded that it would create a substantial risk of bodily injury to another, regardless of their citizenship or geographic location. That's up above. And he just goes down below and says, I read this meaning anywhere. And so when he finally makes his holding, he doesn't put the geography or the citizenship. He just says, would create a substantial risk of bodily injury to another person or serious damage to the property of another. Now, the question is, that's not challenged. The only thing that's challenged is the possible inference is that the only persons that would be subject to injury are those in Mexico. But that ain't so either. He never made- And if it's not so, if he's posing a risk to any person, and we interpret that to mean in the United States, then it seems to me it doesn't make any difference. What's your argument? If we say the statute poses a risk of personal injury or property in the United States, what's the difference? Then my point there, Your Honor, is that's what I'm asking you to do. And if you do that, Your Honor, I'm suggesting that if you read the record as a whole, and reading Judge Britt's request for further briefing, and reading his order, that Judge Britt did, in effect- He may not have expressly said the language the way you just described, but in essence- I was reading from his opinion. When I just read you that, I was- From his order. Yes, sir. Which I think is in the Joint Appendix around page 107. Right, exactly. And my point is that if you've said what you just said to me to Judge Britt, my reading of everything that happened below is that Judge Britt would say, well, then I need to look at it again. Why? Because he made his decision because he believed that Congress required him to make that with respect to him ever being a danger to anyone, anywhere. And that's not what the statute- If he's a danger to anyone, anywhere, that includes the United States. That's what he says in the first sentence of this last paragraph that Judge Niemeyer read. It's clearly in the disjunctive, whether he's released in the United States or his native Mexico. He would prove a high risk of dangerousness. But that's my point, Your Honor. He's not going to be unconditionally released in the United States. We just don't know that. What we know is that we have an interest because he's in the United States. And if we issued an order today releasing him, he would be on the streets of the United States. There is no detainer. There is no warrant. There is no homeland proceeding. There is no criminal proceeding open today. So right now, whether respondent is released in the United States or in his native Mexico, his release would prove a high risk. And that finding is not challenged. And you're suggesting because we exclude Mexico from the scope of the statute, we have to do something different? Your Honor, I asked the court to basically consider a couple of inferences. Number one, I asked the court to consider that the executive branch will fulfill its obligations to carry out the law that Congress does. Well, I'm just asking the court for that presumption. There's 11 million Iraelians in the United States. Except this one is in a discrete location where he is not free to move around. And he's a priority one person under the administration's current procedures. If we issued an order today, releasing him because he was illegally detained under this statute 42, whatever it is, 4246D. If we issued an order, Butner would have to release him immediately. They could not detain him. And he would have a right to habeas corpus immediately. And so they would release him this afternoon or tomorrow morning. There is nobody they would have to release him to at this point. There is no order pending. There is no proceeding pending against him. There's no criminal proceeding. There's no detainer. Your Honor, I'm not asking you to issue an order for him to be released. I'm asking you to issue an order for remand so that the court can apply the criteria in the fashion that Congress intended. And I suggest to the court respectfully. Tell me what's the change going to be? He already found he's a risk to anybody in the United States or Mexico. And that's not challenged. Well, perhaps my briefing was inartful, Your Honor. But we challenged the entire commitment. And I believe that the way Judge Britt articulated the hearings in both the hearings. But the basis of your challenge is based on, for lack of a better word, an argument of extraterritoriality. And even if, I think that dialogue between you and Judge Meemeyer has covered and recovered that, even if that part is wrong, clearly he has determined that if the respondent is released in the United States, that would pose a high risk of dangerousness. And that's, you haven't, if I missed it, you can tell us where it is in your brief. Where have you said that part of the finding was error? Judge Agee, I did not expressly state that that part of the finding was error. Because it's our position that he is not going to be unconditionally released within the United States. That the trial court would not- There's no basis to make that. No basis. Well, the only thing I can suggest, Your Honor, is perhaps I have a better trust of the executive branch carrying out the law. It's not a trust. If I'm going up, if six of us are going up the highway at 75 miles an hour, speed limit 65, it doesn't mean all of us are going to be stopped, even though they should stop us all. No, that's- And if this guy's got a higher priority, so we guess there's a greater chance. But the point is that at this point, the way the things stand, he is a risk to people in the United States if released. And that's what the judge found, and that's not challenged. Your challenge is to the consideration of risks to people in Mexico. But we can go with you on that, say, hypothetically. We can go with you and exclude that as a consideration, but he's still stuck with the risk to the people in the United States. And the question is, so we send it back, and the judge says, okay, I have to consider this now, only to the risk to the people in the United States. Hasn't he already made that opinion? I don't think so, Your Honor. How do you interpret that sentence? Again, I just respectfully believe that based on the totality of how it went, if you were a man, Judge Britt will decide. Does he pose a further danger? I also suggest that the executive branch can issue a detainer just like that. They remove the earlier detainer because he's committed, so there's no need for the detainer. But they could do that. I have to address, what about the consideration? I mean, we have this under our sentencing for supervised release. If he's going to come back, if there's evidence to indicate he could come back, we have that interest, too. I think I didn't understand your question. Well, Your Honor, that's a factor that Judge Britt can decide. If, in fact, this court, and I do ask you, please do issue the opinion defining the statute so that it is not without geographic limitation. And if Judge Britt, at that time, wants to hear evidence, or if he wants to simply issue an order saying, no, I think he's a danger right now, then my alternative is simply to try to do a challenge hearing and show that he no longer presents a danger to people in the United States at a later point. Do you ask us to put a gloss on this statement? Whether respondent is released in the United States or in his native Mexico, his release would pose a high risk of dangerousness given his psychotic disorder and cognitive deficits. You challenge that statement? I'm out of time, but I hope Judge Neymar will let me answer that. And I do. And again, simply by saying that I think that in the totality of the record and the way Judge Britt specifically presented it for further briefing and the way he defined the way the issue before him on the second time around, everybody got wrapped up on what does person mean. And so I wish I had cited to the Shaboon case, of which I'm sure you're familiar, Your Honor. And if I had cited to that, I believe Judge Britt would have more carefully and expressly stated that. That's just what I think. But you guys argued about person, whether it has to be a citizen or not. And it seems to me that's irrelevant, too. Right, it is. Person's been used in the Constitution and everywhere. It's been construed a zillion times. It is. And if he's opposed— That's irrelevant. That's not your argument. Your argument is whether the judge made this decision based on Mexican injury. And if he said exclusively, there's no risk to the United States, but there is in Mexico, that's a different story, isn't it? Well, I'm simply asking this Court to expressly find that Judge Britt erred in finding that he posed a risk to people outside of the United States as well, even if—irrespective of the rest of the order. And if you do that and remand to him, I'm very confident that Judge Britt will do the right thing in this case, Your Honor. What is that? I think that Judge Britt will clearly inform us that— What opinion do you expect from Judge Britt, the best opinion you could get? Well, I would expect one of two things. If this Court remands, I believe Judge Britt will give us another hearing. So that he can obviously hear from both sides. What is the remedy you want, ultimately? Ultimately, I just want Judge Britt to rule if he finds that Mr. Alanis presents a substantial risk of danger if he is unconditionally released within the United States. Because that's the ruling that I think is going to not only solve this case, but also help others. Again, Your Honor, I— You don't believe he's ruled that? I—respectfully, I know what it says. I simply suggest that— I believe the reason why Judge Britt wanted this case to come forward, the reason he asked me and enjoined me to do it, is he wants an answer to the legal question. And so I'm simply asking, if you do that, then that will not only help Judge Britt on this, it'll also, I believe, solve problems in future cases. You don't believe he's ruled that you're going to have him released from Butner? Absolutely, Your Honor. That's what you want, and the judge has said he's not going to be released because he's a danger. Currently, yes. Now, Your Honor, we have people committed and released. There's three ways, generally, that people get released from these commitments. First, the Attorney General will— sometimes the Attorney General will simply issue a letter saying, he's improved. Let him go. And a motion for discharge. That's not— you know, he never gets improved from the schizophrenia, but perhaps his conduct will no longer present that danger. I don't think that that's going to happen because of the schizophrenia. As a result of what would— I mean, the best it sounds like you can do is he gets released and then he gets deported. Yes, sir. That's the ultimate best answer for Mr. Alanis. We keep going around the same thing over and over again, which is what appears to be fairly clear disjunctive language in the first sentence of this last paragraph of the order. It looks like what you want is really for us to give an advisory opinion on the extraterritorial part of what he decided when we have unchallenged finding with regard to what would happen in the United States. Judge Agee, I'm not asking for an advisory opinion, Your Honor. I believe that by him saying he presents a danger to people elsewhere. You've got alternate grounds, hardbook law, partially based on what would happen in the United States, partially what would happen in Mexico. And one alternate ground, what would happen in the United States, is unchallenged. Don't we just usually stop there? I think the court could simply say we found at least one ground for which we want to affirm and you could do that. And that's going to leave open this question and we'll just have to articulate this better and bring it back again to help Judge Britt to ultimately apply it. Because Judge Britt feels bound under current law until he hears from you to apply this with no geographic limitation. Mr. Gilbert, could I ask, you framed the issue as whether the district court erred in committing Mr. Ramirez-Alanis to the custody of the Attorney General by finding and concluding that his conditional release to custody for transfer to Arizona and deportation to Metco. Where do you find that language? And perhaps when you go back, you can point me to that language in the district court's opinion. Where the district court found and concluded that Mr. Ramirez-Alanis' conditional release to custody for transfer to Arizona and deportation to Mexico would create a risk following injury. Because what I'm seeing, I'm going back through the district court's opinion, which I read exactly as you do because the bulk of the opinion focuses on the district court's conclusion that, and in fact, the underlying rationale for reaching the issue at all is that he thought he was going to be deported and whether or not when he was deported, removed, that he would be a danger there. That was the impetus for the analysis. So if there's some indication in here that suggests that there was some continuing obligation that he, as you phrased it, would be released to custody for transfer to Arizona and deportation. And Your Honor, I can't point you to a language in his order. But like you, I believe that if you look at the thing in totality, that that's where Judge Britt was coming from. And he based that in part on the fact that he'd been removed as an aggravated felon, that the current administration's policy as evidenced in the record, I believe around page 79, if I remember correctly, Secretary Jay Johnson said he's priority one. He fits that in two categories. I understand. And I appreciate it. And I think you've answered my question. You've got some rebuttal, right? Your Honor, I did ask for three minutes for rebuttal. I probably won't need all of it. But I'm happy to continue to answer questions. Thank you. Mr. Dotson. Good morning, Your Honors. And may it please the Court. My name is Robert Dotson, and I represent the United States, the appellee in this case. As has already been discussed, although the issue here has been framed as whether or not 4246 applies when you're talking about at-risk persons located outside the United States, this Court need not even reach that question and have the ability to affirm the District Court's commitment of Mr. Ramirez-Alaniz. And that's because, as has been discussed, Judge Britt clearly pointed out that whether or not Mr. Ramirez-Alaniz would be released to the United States or to his native Mexico, he would pose a risk of danger to people. So obviously, whether he's released to the United States— It can't apply to dangers to Mexico or to Honduras or to Argentina. I mean, to put it bluntly, we don't care. I mean, we're regulating the conduct of people in the United States, and he's a risk in the United States, and we've committed him, and there's no challenge to the reasons for his commitment. The only issue is, do you need to issue such an order when he's going to be deported to Mexico right away? And there's two problems with that. One is the assumption he's going to be committed immediately to Mexico. I mean, there could be an interim where he's still on the streets. And the second is the judge probably assumed that I can even consider the risk of injury to Mexicans. And I can't see how a statute could be read that way, but maybe my colleagues can. But it seems to me, if we were able to commit people who posed risk to people in other countries, we could just go around picking people up around the world who are crazy. Well, you raised a couple of points earlier and in your question just then. And I want to start talking about this detainer issue, because as Judge Niemeyer, as you pointed out earlier, the record is clear that there is no detainer. There are no proceedings. The Department of Homeland Security has a no detainer. The Bureau of Prisons actually- He may pull one on immediately. I mean, his argument is he may face it immediately, but in the interim, he's still in the process. He's still in the United States. He's still around the United States people, whether they're citizens or non-citizens. And the statute protects against personal injury and property damage. Yes, it does. And in Mr. Ramirez-Alaniz's case, it's twofold. Because again, one, and the Bureau of Prisons has notified Mr. Ramirez-Alaniz officially. You don't have a detainer lodged. The earlier detainer we told you that we had against you is no longer there. So your point earlier, the Bureau of Prisons, if this court reverses the commitment of Mr. Ramirez-Alaniz, the Bureau of Prisons will release Mr. Ramirez-Alaniz to the street. There is no more proceedings. And so therefore, he'll be a danger to the people of the United States. However, even making an assumption that the ICE folks will lodge a detainer against Mr. Ramirez-Alaniz, he has shown a pattern and an ability to enter this country illegally and easily. And the last time he was deported, he re-entered a mere days after being deported, the first time. So even if he's deported, even if this court makes that leap that, as Mr. Ramirez-Alaniz's counsel, that the executive branch will fulfill its obligations, it's not that ICE is refusing or ignoring the law. And I want to clarify that the detainer, as I understand it, was not canceled because of this commitment. It's canceled because Mr. Ramirez-Alaniz is a mentally ill person. And the memo that the secretary of the Department of Homeland Security issued that Respondent's Counselor keeps referring to, if you read further in that memo, it specifically directs field officers not to expend the DHS's resources in trying to deport mentally ill individuals. That's the current state of immigration in this country today. And we can't solve that problem here. But the fact is, ICE is not going to lodge a detainer. They're not going to deport Mr. Ramirez-Alaniz because of his mental illness. It's all speculation. Exactly. We can't say your promises and his observations and assume that this law is going to be followed. The question is, does the statute have an operative effect now? Yes. And the answer is, it does have an operative effect. And the judge found he's a risk to the people in the United States. Yes, I completely agree with you, Judge Niemeyer. I mean, the record is clear. And as we look at the record now, there is no question that he'll be released to the United States. And the clear and convincing evidence that Judge Britt found, and even if he didn't expressly state it, it's in the record that both the independent examiner and the government's expert agreed that if he was released to the United States, he would pose a risk of danger to people and property in the United States. As far as your case is concerned, if the district court held, which it appears to have, that it's finding that if respondents are released in the United States, it would pose a high risk of dangerousness. And that finding is unchallenged on appeal by the appellate. Then the case is over there. Yes. Yes, we agree. You know, again, it's our position that there's plenty ample evidence. All the experts agree that the two... You spent a lot of time arguing for extraterritorial, didn't you? Well, we believe that the government does believe, and we argued in our brief, that it can be... Is that an official position of the government? It is the position of the government in this case. And here's the reason why, Your Honor, is because... You've said in this case, is this position of the government in all cases that involve 4246 and an alien, and illegally. We believe that the government believes that the statute would apply to considering a person is a person, whether that person is located... That's not the issue. The issue is the injury, who's being injured. Right, the person, the at-risk person, if you will. And, you know, without getting too bogged down, you know, in that issue, because again, the government believes you don't even need to reach that question. I know Judge Britt... That's not the issue. The issue is the risk or injury to persons in Mexico, the extraterritorial effect. The defining person as a citizen or not is not extraterritorial. That relates to who they picked up, and it clearly applies to any person. I mean, you can be a person who's stolen to here. If he's not competent, he's a risky people in the United States, you pick him up. Right. But the issue, the big issue, was the extraterritorial application of consideration of damage to injury to property in Mexico or people in Mexico. Yes. And you guys argue that? Your Honor, I'm more than happy to discuss this with you, and I, but I just want to... No, is that a policy position of the government? It is. It is the position that 4246 applies to person, the person, the at-risk person, wherever they're located. And, you know, the court, but again, I just want to make clear that we can discuss that issue if you'd like, and I'm happy to have that dialogue. But as applied to this case, we don't need to get there. And I know Judge Britt wants an answer to that, and Respondents Council, you know, that Judge Britt did urge Mr. Gilbert to take this case up for that reason. But, and sort of the issue has been conflated to that, but the issue is a simple one. Well, Judge Britt wants to know whether your position is correct, and your position is very strange. I've never seen it argued that way. I've never seen a statute applied that way. And I can't figure out what the United States interest is in protecting the property and persons in Mexico. Well, as you pointed out earlier, Judge Niemeyer, is the global community and the United States is worried about... We're not worried about the conditions of whether people cause property, and an individual causes injury or damage to property in other countries, do we? Well, here's one example. And, you know, at the risk of getting into hypotheticals, we did cite a hypothetical in our brief that you have a person who is in custody, say he's incompetent to stand trial, and he's schizophrenic. And normally what we see with these patients is that there's a certain theme to their delusions or to their paranoia. And we have a person who, all their schizophrenic, paranoid delusions center around things in foreign countries and people in foreign countries. And there's no stated risk of danger to people in this country. Well, here, your position was that the clear and plain language of 4246 doesn't create a requirement that the person at risk be a United States citizen or live in any particular geographical location. Right. That was your position. Right. And part of the reason you took that position, you took the position based, as you say, based on the plain language of the statute. Right. In fact, the fact that the statute had been amended to remove the limitation in the United States. Correct. So you did have, that was your argument. Yes. And there is, and you presented both a textual and a legislative history basis for that argument. Yes. Whether one ultimately agrees with it or not. Yes. That's very true. We did argue that in our brief. The whole thing was based on the notion that there was a limitation that it be in the United States and that isn't what the statute removed was. It says the, it says other interests of the United States, which means it's broader. It applies to private people in the United States too. That's true. They removed it in order to protect all of society in the United States, but that doesn't talk about letting it go outside. That's not geographical. That's, that's possessive interests of the United States. Right. We, we, we agree. We believe that the removal of Congress when 4246, as it was 4247 before, when it was amended and Congress removed that, that clause, you're talking about other interests of the United States. We, we believe and argue that that is, that does go to the geographic location. That's not. Possessive goes to interests of the United States. Includes persons who are located in the United States. No, it doesn't. An interest of the United States could be construed as United States property and United States persons. Well, the clause says property, officers, property, or other interests of the United States. So reading it all together, interest of the United States. Of the United States, it doesn't say in. It says of, which is a possessive term. Right. Belonging to the United States. And when they remove that, they make it broader, but it doesn't say that the statute goes in Mexico and applies to property there. I, I, I don't know whether that's an approved justice department interpretation or not, but I'd be very, very surprised. Well, that's. That's the position that we took in the brief and we're maintaining that today, but we, we still fall back on. Justice department position or homeland security position. That's the position of the United States attorney in the Eastern district of North Carolina. But again, you know, that, that, that's a very important question and an issue to answer. It just doesn't need to be answered in this case because, you know, as, as has been stated before, there was a very clear finding by judge Britt that Mr. Ramirez-Alaniz posed the risk of danger to people. Well, I understand that you've heard the dialogue and so forth, but I, I sort of surprised at the government's position because maybe you have prompted the whole confusion in this case about the way you're interpreting the statute. Well, that's not the, that's not the way that the case was presented at the district court. It kind of came up, the issue kind of came up. The government all along believe that Mr. Ramirez-Alaniz posed the risk of danger to people in the United States. We took a position in the district court and we're maintaining that position, but the issue really was framed not by the government. We didn't file a certificate of dangerousness on Mr. Ramirez-Alaniz because we thought he was a danger to people of Mexico. We thought he was a danger to people of the United States and that's why we filed the certificate. Moving forward, the issue kind of came up later, but as we're circling back around now, it is very clear that from the beginning, he has posed the risk of danger to people in the United States. There's clear and convincing evidence of that and this court should affirm that ruling. It just, I mean, it just, to the extent that there's confusion, it's your first argument that the legal interpretation of 4246D is simply too narrow. I think it at least perpetuated the confusion of what was at issue and what was necessary to decide the case. Yes, Your Honor. And the issue, there was two issues that you conflate the two. One is who can be picked up and it says person and you made a big argument, well, it doesn't refer to United States citizens, it refers to this. That doesn't have anything to do with it. Person's a person, but that's not geographical. Right, citizen and geographic location are two different things. And the person's being the risk, the object of the risk is where you really introduced a lot of confusion saying that, oh, the risk to somebody in a foreign country is, you think Congress was concerned about that? Right, and I think, again, we got, you know, and as Mr. Gilbert pointed out earlier, the district court, we all sort of got wrapped up in this question and I think lost sight of the point in this particular case, which is, as I've said many times, is that there's ample evidence to show that Mr. Ramirez-Alanis poses a risk of danger to people in this country. Thank you. If the extraterritoriality argument here is just the U.S. Attorney's Office, obviously with Butner, you're probably going to have more of these types of cases than a lot of other districts, but if it's just the U.S. Attorney's position, it would seem like that the U.S. Attorney would want to make inquiry further up the chain of command to see if there isn't some national decision on this that's uniform in the United States instead of just being the position in this one district. Yes, Your Honor. And, you know, by the way, there is a similar, there is no other case law on this point, but there's a similar sort of analogy with juveniles. This came up in the Eighth Circuit, and the court there found that although juveniles, it was not expressly stated that 4246 applied to juveniles, that the court affirmed that 4246 does cover juveniles. So this question has not been answered at all across the circuits, and that's the closest we could find that a circuit answered somewhat of an analogy. I understand that the definition of person is a totally distinct issue to the extraterritoriality. Yes. It's not even related. The person is who you pick up, whether you pick up a juvenile, whether you pick up a citizen, an alien, a person who's here illegally. Yes. And that term is not restricted by Congress. Right. The other question is to whom it applies, and that to me is unsupported to have the statute apply to injury in Mexico. All right. Thank you, and we'll hear from Mr. Gilbert. You want an advisory opinion. That's what you want. No, Your Honor. I want the same thing Judge Britt wants. Judge Britt, on page 53 of the record, Judge Britt said, civil commitment is going to result in virtually a life sentence for aliens in the United States without permission. And then he urged appeal on page 102 of the joint appendix. And the reason is very, very good. And I'd like to respond a bit to a question raised by Judge Agee at the very end. We do have most of these cases, Your Honor. I represent 179 of these civil committees, 45 of them are on conditional release as of Monday. And the reason we have so many is that 4246 contemplates the hearing to take place at the location where a person is determined now that this decision has to be made. The lion's share of them are Butner, because that's where they're doing the studies. Occasionally, there's some Dun and Devins and Springfield, Missouri, Rochester. But we have the lion's share. And it falls on Judge Britt, who for many years has been the judge who hears all of these cases. And I think that Judge Britt relied on us counsel when he said, I'd like you to give me more briefing on this. I want to know the issue. Is this supposed to be all over the globe? And actually, it was the definition of person. And I just wish we would have more artfully presented it. Do you agree? I agree, 100%. And I wish I had briefed it better before Judge Britt. The introduction of the interests of the United States is meaningful. The removal of that seems to broaden the statute in a different sense. Of the United States, it's not geographical. In the United States, it's geographical. Of the United States, it's possessed the interests that belong to the United States. Absolutely. I agree. So they broaden it to give interests of private persons and everybody. Your Honor, 1949, you correctly pointed out, it said officers, assuming that's US officers, property, and other interests of the United States. Reagan gets shot in 1981. 1984, the Insane Reform Act amends this. And they basically decided to word this in a way that everybody in the United States, if a person is in the United States without authority, they should be protected as well in the United States. But the only point I wanted to make for the court is that it's really crucial. Judge Britt and I both want the answer to this. It's going to come up again and again. And we need this court to simply state that Congress did not intend for every person who finds himself an alien who's here without authorization to be fed, clothed, medicated, and housed forever. Congress couldn't have intended that in 1984. You told me there's three ways they can get out. And that could happen tomorrow. And there could be other ways. He could have a hearing. He could have, doctors could change their minds. There's new drugs. Homeland Security could say, ICE could say, we want him out and send a letter to the Bureau of Prisons and pick him up and take him out. Yes, sir. I mean, there's just all kinds of things that preclude the notion there's a lifetime sentence. Well, those are Judge Britt's words, Your Honor. I know. It's a little overblown, isn't it? I don't think so. Because again, the three methods, Your Honor, the U.S. Attorney can say a person used to have a disease. They don't have it anymore. Let him go. Or they could say that they are managed now in such a way that they no longer present that danger. That's not going to apply to Mr. Allen. He's because of the schizophrenia. The second way is conditional. The medication is OK, isn't it? If he has this monthly injection they talked about and had him report to the Bureau of Prisons the first day of every month to get the injection because he doesn't have a family support network, would that suffice? That's the second way a person gets out, Your Honor, what they call conditional release. They are not released. They're released on conditions with a regimen of care that assures the judge that if this person follows this, they won't cause a problem. The problem for people like Mr. Ramirez-Alaniz is he doesn't get benefits. So he can't afford the medication. He won't get Social Security benefits. So he won't be able to live in a group home like the rest of my clients who are on conditional release do. And the third method, the only third method is that, and is contemplated early in the statute, is that they're turned over to the state. And the state, as we know, is defined to include the United States and the District of Columbia. So he's not going to be released under any of the three typical methods. The only way he's going to be released, and certainly the government could, as you said, speculating, the government could say, we want an issue for deportation and we're filing a motion with the court and asking him to discharge the commitment. And if Judge Britt believed that the person would be deported, he could sign that order. So that could happen. But to me, if it's an economic issue, you could just pick him up at the gate of the Butner and fly him to the border or fly him into Mexico City and pay for his transportation there. That's the typical deportation proceedings. And Your Honor, I, again, I'd like to believe that the executive branch will carry out the laws. In this case, I mean, all those are possibilities that we don't know. We do know he's the highest priority for deportation. We do know that he is under an existing removal order, which says that if you're found in the United States, you are subject to immediate removal. We do know that he said he wants to go back and he will not fight it. He doesn't want to return to the United States until he comes back. Well, I can only tell you what he reported to the doctors independently, Your Honor. And he sold both of them. I was beat up. I was maced. I don't want to come back. I just want to go home to live with my aunt in Central Mexico, Your Honor. So that's what we know. And I ask the court to simply give Judge Britt the order, give Judge Britt the opinion that will enable him to correctly apply the statute for civil commitment. All right. Thank you. We'll come down and greet counsel and proceed.
judges: Paul V. Niemeyer, Allyson K. Duncan, G. Steven Agee